

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

50 Main Street, Suite 1100
White Plains, New York 10606

December 27, 2024

**BY ECF AND EMAIL**

The Honorable Vincent L. Briccetti
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

Re:   *United States v. Devin Isaac*, 24 Cr. 39 (VB)

Dear Judge Briccetti:

The Government respectfully submits this letter in advance of the sentencing of defendant Devin Isaac, currently scheduled for January 9, 2025, at 11 a.m., for making false statements, and in response to Isaac's December 23, 2024 sentencing submission (Dkt. No. 24).

In 2016, Isaac was a young man, just seventeen. He was a member of a brutal street gang located in Newburgh, called "Southside." At the direction of senior gang leader Ardae Hines, on August 1, 2016, Isaac shot and killed Hines' rival, Deandric Little. Isaac was arrested by state authorities a few months later, after fleeing to Staten Island. In March 2017, while Isaac was incarcerated pending trial, federal authorities attempted to speak to Isaac about Hines' role in Little's murder, but Isaac refused to provide any information. Isaac ultimately pleaded guilty and was sentenced to 18 years' imprisonment. In February 2022, the Government charged Hines for his role in Little's murder. On May 26, 2022, the Government attempted to talk to Isaac again. This time, Isaac spoke. And he lied, repeatedly. Isaac denied that he had killed Little at Hines' instruction and falsely denied writing a letter to Hines about the murder. The following day, Isaac spoke to a witness who had just been served with a federal grand jury subpoena to testify about Isaac's conduct in connection with the federal investigation. Isaac instructed the witness to lie to the grand jury, and falsely claim she did not know anything relevant to the federal investigation.

Isaac thus twice obstructed the federal investigation of Hines: first through his statements on May 26, attempting to falsely exculpate Hines, and second through his attempted witness tampering the next day. This conduct is serious: Isaac's crimes were calculated to allow Hines, a dangerous gang leader, to avoid the full consequences of his heinous crimes. And Isaac's lies were not passing whims: he was an adult by May 2022, and he could understand the consequences of his conduct. Accordingly, the only appropriate sentence is a Guidelines sentence of five years' imprisonment, to run consecutively to the remainder of his state sentence.

I.    **Factual Background**

From at least 2014 to at least June 2017, a Newburgh street gang called Southside was engaged in racketeering activity, including acts of violence and the distribution of narcotics. (PSR ¶ 10.) Participation in criminal activity, particularly violence against other gang members, was important for elevating members' status and reputation within Southside. (*Id.*) Southside's primary base of operations was the neighborhood surrounding the intersection of South and Liberty Streets in Newburgh. (*Id.*)

Southside members used violence, including shootings and robberies, to defend drug turf against rival gang members. (*Id.* ¶ 11.) As of July 2016, Isaac was a junior member of Southside. (*Id.* ¶ 12.) Ardae Hines, a/k/a "Young Money," a/k/a "YM," was one of Southside's senior leaders. (*Id.*) Hines had an ongoing feud with another group in Newburgh known as the "Breadwinners," and particularly Breadwinner member Deandric Little, a/k/a "Moolah"; the rivalry with Little was based on disputes over drug territory and a personal feud related to Little's girlfriend. (*Id.*)

On August 1, 2016, Hines continued his feud with Little and a person who later became a cooperating witness for the Government ("CW-1"). (*Id.* ¶ 13.) Over the course of that day, CW-1 and Hines had numerous confrontations, including nearly having a physical altercation before being separated. (*Id.*) CW-1 returned to his house after these incidents. (*Id.*)

While CW-1 and Little were gone, Hines instructed Isaac to shoot and kill Little if Little was found in Southside territory. (*Id.* ¶ 14.) Hines informed Isaac that Little was a cross-town rival, and helped furnish Isaac with a firearm. (*Id.*) Later that day, CW-1 and Little returned to Southside territory. (*Id.*) CW-1 and Little approached Hines and other Southside members standing on the street. (*Id.*) The three men began arguing, and CW-1 and Hines began to push each other. (*Id.*) Hines shouted that CW-1 "could get a fair one," meaning a fistfight, but that anyone else would be shot. (*Id.*) A few seconds later, Isaac walked out of a deli across the street from the argument, and shot Little in the back, at Hines' direction. (*Id.*) Little later died of his injuries. (*Id.*)

Isaac was arrested on state murder charges in late 2016. (*Id.* ¶ 15.) The FBI and United States Attorney's Office attempted to communicate to Isaac about the murder in March 2017, but Isaac refused to provide information. (*Id.*) In April 2017, Isaac mailed a letter (the "Letter") to an associate of his ("Witness-2"), with instructions that a photograph of the Letter be sent to Hines.[1] (*Id.* ¶ 16.) The Letter referenced money that Isaac believed Hines owed in exchange for Isaac's commission of the offense and Isaac's ongoing silence to federal authorities. (*Id.*) Specifically, the Letter states in relevant part: "Tell YM [Hines] I want $1,000 in my account by the 26th . . . . I don't wanna HEAR NUN ABOUT HE DONT GOT IT CAUSE HE GOT SPREADY." (PSR ¶ 16; Ex. A.) The Letter also states, "Tell him don't make it HOT OR NUN This Between Me, HIM & My G5 Pistol IF needed & Tell him The Feds Still tryna get me to snitch on him but that's not my character. All I know How to do is KILL." (PSR ¶ 16; Ex. A.) The Letter further stated

---

[1] Photographs of the Letter were recovered from Hines' phone after his arrest in June 2017. A copy of the photographs of the Letter is attached hereto as Exhibit A.

that Hines should "Western Union the stack to you so you can send it to me in my name. I TOLD THE FEDS I DON'T KNOW YM, SO LET'S DO THIS MY WAY." (PSR ¶ 16; Ex. A.) In sum, these statements meant that Isaac expected Hines to pay him $1,000 through Witness-2, and that Isaac expected this payment based on his agreement with Hines to murder Little and his refusal to cooperate with law enforcement about Hines (*i.e.*, "Tell him The Feds Still tryna get me to snitch on him"). (PSR ¶ 16.) Additionally, the Letter reflects Hines and Isaac's involvement with the Bloods gang; Isaac referred to several high-ranking Blood gang members who he said he would inform if he did not receive the money. (*Id.*)

In July 2017, Isaac pleaded guilty to state murder and firearms charges, and was later sentenced to 18 years imprisonment. (*Id.* ¶ 17.)

In June 2017, federal authorities arrested Hines and other members of Southside on racketeering, narcotics, and firearms charges. *United States v. Hines*, et al., 17 Cr. 364 (CS). In 2019, Hines pleaded guilty to racketeering and narcotics offenses and was sentenced to 15 years' imprisonment. *See id.* The Government continued to investigate Little's murder, and in February 2022, a federal grand jury charged Hines with murder offenses stemming from his participation in the murder of Little. *United States v. Hines*, 22 Cr. 42 (CS). (PSR ¶ 18.)

On May 26, 2022, FBI agents brought Isaac to the U.S. Attorney's Office for an interview. (*Id.* ¶ 19.) This time, Isaac agreed to provide information, though as described herein, that information was false. At the interview, Isaac stated, among other things, that he knew Hines had been arrested, that Hines was not involved in Little's murder, and that Isaac had killed Little for personal reasons. (*Id.*) When shown the Letter, Isaac denied writing it. (*Id.*)

Later that day, FBI agents served a grand jury subpoena on Witness-2. (*Id.* ¶ 20.) The following day, from prison, Isaac placed a call to a third party, who then dialed in Witness-2. (*Id.*) During that call (a draft transcript of which is attached as Exhibit B), Isaac and Witness-2 discussed Witness-2 being contacted by federal law enforcement. (*Id.*) Witness-2 informed Isaac, in sum and substance, that she is being required to go to court. (*Id.*) Isaac directed Witness-2 repeatedly to come and see him. (*Id.*) Isaac then informed her, "Listen man, you don't know nothing, You don't know nothing." (PSR ¶ 20; Ex. B at 4:90-91.) When Witness-2 answered affirmatively, Isaac laughed and then stated again, "That's what I'm trying to say like you don't know nothing. We good. You hear me." (PSR ¶ 20; Ex. B at 4:95-97.) Witness-2 then described how she has been served with a subpoena and has to talk to the grand jury. (PSR ¶ 20; Ex. B at 5:127-28.) Isaac then said, "And they, they, they saying, yeah they wildin' like that shit don't, yeah, they wildin'. Man, they wildin', but I definitely, you'll be able to see me though. They'll, you'll be able to come see me, right. But, um, I gotta run it up." (PSR ¶ 20; Ex. B at 5:130-36.) Witness-2 responded that she was "aggravated." (PSR ¶ 20; Ex. B at 5:138.) Isaac then replied:

> It ain't really nothing to be aggravated about no more like just you now the vibes, n****. We ain't do shit you. You don't know shit. I don't know shit. I don't give a fuck like I told them. Like, my n****, I did what the fuck I did. I don't know this n****.

(PSR ¶ 20; Ex. B at 6:144-51.)  Later in the call, the other person that Isaac and Witness-2 are referencing is stated expressly, when Witness-2 states that when she was approached by the FBI, she was specifically asked if "YM" gave her money.  (PSR ¶ 21; Ex. B at 16:440-42.)

The Government produced the notes from the May 26, 2022 interview to Hines' attorney the same day, and noted that the materials may be covered by *Brady v. Maryland*.  (PSR ¶ 22.)

## II.   Procedural History and Guidelines Calculation

On January 24, 2024, Isaac was charged with obstruction of justice and witness tampering.  (Dkt. No. 3.)  Isaac was arrested and brought from state custody to this Court on February 6, 2024.  (*See* 2/6/24 Minute Entry.)  On August 1, 2024, Isaac appeared before United States Magistrate Judge Judith C. McCarthy, consented to the filing of a one-count information charging him with making false statements, in violation of 18 U.S.C. § 1001, and pled guilty pursuant to a plea agreement (the "Plea Agreement").  (PSR ¶ 4.)  On September 23, 2024, Your Honor accepted the plea.  (*Id.*)

Pursuant to the Plea Agreement, the parties stipulated to a United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") total offense level of 27: an initial level of 43, because Isaac tried to obstruct an investigation into murder in aid of racketeering; a base offense level of 30, pursuant to U.S.S.G. § 2X3.1(a)(1) and (3)(A); with three levels removed for acceptance of responsibility.  (*Id.* ¶ 5.)  As a result of these calculations, the parties agree that the applicable Guidelines range would be 87 to 108 months' imprisonment, but with a statutory maximum term of 60 months' imprisonment (the "Stipulated Guidelines Sentence").  (*Id.*)  The parties also agree that, pursuant to U.S.S.G. § 5G1.3(a), the sentence imposed in this case should run consecutively to the undischarged term of imprisonment the defendant is still subject to for his conviction in the *People v. Devin Isaac*, 00586-2016.  (*Id.*)

The United States Probation Office's ("Probation") Guidelines calculation is the same as that contained in the Plea Agreement.  (*Id.* ¶¶ 30-40, 44-45, 84-86.)  Probation recommends a custodial sentence of 60 months followed by three years of supervised release.  (*Id.* at 23-25.)

## III.   The Defendant's Sentencing Submission

The defense has submitted a letter in connection with the upcoming sentencing.  (Dkt. No. 24.)  In his sentencing submission, the defendant does not object to the Stipulated Guidelines Sentence set forth in the Plea Agreement and in the PSR, but he asserts that the Court should impose "the least possible sentence" upon consideration of the sentencing factors set forth in Title 18, United States Code, Section 3553(a).  (*Id.*)

## IV.   Discussion

### A.   Applicable Law

The Guidelines still provide important guidance to the Court following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005).  Indeed,

although *Booker* held that the Guidelines are no longer mandatory, it also held that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)-(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### B. A Guidelines Sentence Is Reasonable and Appropriate in This Case

The Government respectfully submits that the Stipulated Guidelines Sentence of 60 months' imprisonment would be sufficient, but not greater than necessary, to achieve the purposes of sentencing. Indeed, the statutory sentencing factors set forth in 18 U.S.C. § 3553(a) weigh in favor of a total federal sentence of 5 years, to run consecutively to Isaac's remaining state sentence. The factors particularly applicable here include the need for the sentence to reflect the nature and seriousness of the offense, to promote respect for the law, and to afford adequate deterrence to this defendant and others. 18 U.S.C. § 3553(a)(2)(A)-(B).

*Seriousness of the Offense and Promoting Respect for the Law*

On August 1, 2016, Isaac murdered Deandric Little. A few months later, Isaac was given the opportunity to assist the Government with its ongoing investigation into that murder. As was his right, he refused. Years later, now an adult, Isaac was given another opportunity to assist the Government. But this time he did not merely exercise his right to remain silent. Instead, Isaac flatly lied, including about Hines' role in the murder and that he did not write the Letter. The following day, Isaac compounded his lies, instructing Witness-2 to make false statements to the

Grand Jury. These are serious lies intended to allow Ardae Hines, a dangerous gang leader, to escape just punishment for murder.

In Issac's sentencing submission, he concedes, as he must, that "lying to a Federal Agent is serious." (Dkt. No. 24 at 2.) The Court should appropriately punish Isaac for these falsities, particularly given that they were intended to interfere with a federal racketeering and murder investigation. A substantial incarceratory sentence, therefore, is necessary to reflect the seriousness of the crime and to promote respect for the law.

### *Specific and General Deterrence*

A five year sentence is further needed to specifically deter this defendant from committing additional crimes when he is eventually released. Isaac lied while he was incarcerated on the murder charges. Clearly, the lengthy punishment he faced in the state did not deter him from re-offending, and a lengthy sentence should be imposed.

General deterrence is another important consideration in this case. Isaac's obstructive conduct was not a spur of the moment decision. He had five years to prepare for such a meeting. And he did not stop once; the next day, when he heard Witness-2 had received a subpoena, he went out of his way to contact Witness-2 to instruct her to lie. This offense is thus "more rational, cool, and calculated than sudden crimes of passion or opportunity," and thus is a "prime candidate[] for general deterrence." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006).

### *Defendant's Submission*

In Issac's sentencing submission, he argues that the Section 3553(a) factors weigh in favor of a substantial yet unspecified below-Guidelines sentence of imprisonment—*i.e.*, the "least possible sentence." (Dkt. No. 24 at 2.) But, for the reasons stated herein, the Stipulated Guidelines Sentence of 60 months is the "least possible sentence" that would adequately balance the various considerations under Section 3553(a) and achieve the statute's stated objectives.

Indeed, Issac's sentencing submission focuses much of its argument on a separate and distinct crime—the murder of Deandric Little—instead of the multiple lies that Issac told which were intended to allow Ardae Hines to escape just punishment for murder and which serve as the basis of this criminal case. (*See id.* at 5-6 (arguing that Hines "was at least equally culpable" to Isaac for Little's murder, arguing that Isaac's state sentence "flows from related conduct," and arguing that Isaac's state sentence has a "deterrent message").) It is undisputed that, because of Isaac's lies, the Government produced the notes from the May 26, 2022 interview to Hines' attorney the same day, and noted that the materials may be covered by *Brady v. Maryland*. (PSR ¶ 22.) Lying to the Government and claiming that Hines had nothing to do with Little's murder had real world consequences, and Issac's state sentence—imposed years before Isaac uttered the lies relevant here—is not a substitute or supplement for the sentence that the Court should impose now.

Issac's sentencing submission also asks the Court to impose a sentence substantially below the Stipulated Guidelines Sentence because Isaac had a difficult childhood, has mental health and

drug additional issues, and plans on being a productive member of society when he is released from incarceration. (Dkt. No. 24 at 4-5.) Although these are factors that the Court may consider in imposing a sentence, the Government respectfully submits that these factors do not justify the requested variance. The Government recognizes Isaac's childhood had its challenges and he may have mental health and substance abuse issues, but the Government respectfully submits that the seriousness of Isaac's conduct significantly outweighs these other factors, and a below-Guidelines sentence is not appropriate here. Specifically, while such factors could possibly explain (but not justify) Isaac's youthful violent acts, these factors do not explain or excuse the carefully orchestrated lies he told years later. And while Isaac was only 17 years old at the time of Little's murder, Isaac was 22 years old when he told the lies relevant here, and that is certainly old enough to know right from wrong. Isaac did not experience a momentary lapse in judgment typical of teenagers acting impulsively; to the contrary, Isaac told calculated lies after years to think about the consequences of his previous grave actions. Thus, while the Court may consider the factors highlighted in Issac's sentencing submission, these factors in no way excuse such troubling behavior.

### *The Sentence Should Run Consecutive to His Remaining State Sentence*

The Guidelines state that, "If the instant offense was committed while the defendant was serving a term of imprisonment . . . the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment." U.S.S.G. § 5G1.3(a). The parties agreed in the Plea Agreement that this provision applies to Isaac, which is clear on its face: Isaac lied while he was incarcerated for Little's murder.

*****

In sum, a Guidelines sentence of 60 months' imprisonment would adequately balance the various considerations under Section 3553(a) and achieve the statute's stated objectives.

### V. Conclusion

For the reasons set forth above, the Government respectfully submits that a sentence of five years' imprisonment, to run consecutively with the state sentence in *People v. Devin Isaac*, 00586-

2016, would adequately balance the various considerations under Section 3553(a) and achieve the statute's stated objectives.

                                            Respectfully submitted,

                                            DAMIAN WILLIAMS
                                            United States Attorney

                    By:    /s/ Kingdar Prussien
                               Kingdar Prussien
                               Assistant United States Attorney

cc: Michael Burke, Esq.